# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HONEYWELL TECHNOLOGY**<br>    **SOLUTIONS, INC.;**<br>   **7000 Columbia Gateway Drive**<br>   **Columbia, MD  21046**<br><br>            **Plaintiff,**<br><br>        **v.**<br><br>**DEPARTMENT OF THE AIR FORCE**<br>   **AFLSA/JACL**<br>   **1501 Wilson Blvd., 7ᵗʰ Floor**<br>   **Arlington, Virginia  22202**<br><br>            **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> **Civil Action No. _____** |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF (REVERSE-FOIA)

For its Complaint, Plaintiff, Honeywell Technology Solutions, Inc., through its attorneys, states as follows:

### JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Trade Secrets Act, 18 U.S.C. § 1905; the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e).

## THE PARTIES

2.      Plaintiff, Honeywell Technology Solutions, Inc. is a Delaware corporation with its principal place of business at 7000 Columbia Gateway Drive, Columbia, Maryland 21046, and its offices performing the Air Force Satellite Control Network ("AFSCN") Contract at 1110 Bayfield Drive, Colorado Springs, Colorado 80906.  Honeywell Technology Solutions, Inc. is a wholly-owned subsidiary of Honeywell International Inc., which is headquartered in Morristown, New Jersey.  Honeywell Technology Solutions, Inc. provides technical services such as:  management, space systems and services, engineering, logistics, information technology, and testing and calibration of complex systems to commercial and government customers.  Honeywell Technology Solutions, Inc. is responsible for the performance and administration of the contract at issue (Honeywell Technology Solutions, Inc. is hereinafter referred to as "Honeywell").

3.      Defendant, United States Department of the Air Force ("Air Force"), acting through Air Force Materiel Command's ("AFMC") Space and Missile Systems Center ("SMC") at Los Angeles Air Force Base, California, is an executive agency of the United States and it has possession of and control over trade secret and confidential commercial or financial information that Honeywell seeks to protect from disclosure.  The injunctive relief requested herein extends to and includes all officers, employees and agents of the Air Force.

## SUMMARY OF ACTION

4.      This action arises from the Air Force's August 18, 2005 administrative determination to begin disclosing on September 6, 2005, Honeywell's trade secret and confidential commercial and financial information (herein referred to as "technical and pricing information").  The decision to release the technical and financial information is in response to a

specific FOIA request, and will result in the Air Force's disclosure of information to unsuccessful offerors, and to other persons or entities that request technical and pricing information under FOIA. Honeywell has gone to great effort to protect its technical and pricing information from release and would not otherwise make it available to the public. The Air Force's disclosure of this technical and pricing information will cause substantial competitive and irreparable harm to Honeywell.

5.     The technical and pricing information at issue is exempt from mandatory disclosure under Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4) and Federal Acquisition Regulation ("FAR") §§ 3.104-2, 15.503, 15.506, and 15.609. Public disclosure of the pricing information would violate the Trade Secrets Act, 18 U.S.C. § 1905.

6.     The procedures that the Air Force followed in its August 18, 2005 decision to release Honeywell's contract technical and pricing information did not adequately consider Honeywell's legitimate claims of exemption. This failure by the Air Force to consider those claims violates FOIA, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, as well as the FAR, §§ 3-104-2, 15.503, 15.506, and 15.609.

7.     Honeywell seeks a declaratory judgment that the technical and pricing information at issue is trade secret or confidential commercial or financial information that is exempt from disclosure under FOIA, that the release of such information would violate the Trade Secrets Act, and that the Air Force's determination to release the information is arbitrary and capricious, an abuse of discretion, and contrary to law. Based on an agreement with the Air Force that it will not release the technical and pricing information at issue pending the outcome of this litigation, Honeywell has not sought a temporary restraining order and a preliminary injunction.

<u>STATEMENT OF FACTS</u>

8.    This matter involves Contract No. F04701-02-D-0006 between Honeywell and the Air Force (referred to hereinafter as the "Contract").

9.    The Air Force has been procuring technical services in connection with its satellite and other space systems and their associated ground stations from Honeywell for decades.  The Air Force awarded Contract No. F04701-02-D-0006 to Honeywell effective December 21, 2001 for supplies and services to sustain and evolve the AFSCN.  The technical services included in the Contract are either identical or similar to services provided by Honeywell to the Air Force on other contracts and to other government and commercial customers.

10.    The Air Force's Request for Proposals No. F04701-00-R-0006 (the "RFP") required offerors to submit proposals that set forth a unique technical solution.  Typically, the government describes the work to be performed by including in the RFP a detailed statement of work, skill mix, and specifications, asking the offeror to price the work and describe certain details in the offeror's technical solution.  In those circumstances, the detailed rates and factors used in pricing the work and very specific details in the technical solution are the only creative aspects provided in the proposal.

11.    The AFSCN RFP, on the other hand, provided a Performance-Based Statement of Work ("PB-SOW"), which describes only the desired outcomes.  In accordance with the requirements of the RFP, Honeywell developed its own SOW, Integrated Master Plan ("IMP"), and Integrated Master Schedule ("IMS") and described its own unique technical solution, showing <u>how</u> the work was to be performed.  Moreover, the RFP recognized that offerors could propose revisions to the Air Force PB-SOW.

12.     The RFP provided the Air Force budget for the program by year and "color" of money with some identification of applicable Contract Line Items ("CLINs") at a high level, as well as the award fee percentage for each CLIN.  The language in the RFP put offerors on notice that the Air Force would determine the best value to the government by evaluating the specific allocation of the costs, with breakdown into hours and loaded hourly rates, by CLIN, that the offerors proposed as their respective solution and approach to perform the work.  This information was fundamental to Honeywell's strategy to win the Contract and is the very information being sought in the FOIA request.

13.     Tied to the Honeywell-developed SOW/IMP/IMS are the estimated hours, loaded hourly rates, CLIN costs, and CLIN prices that Honeywell developed to support its solution.  The Contract contains the following information for each CLIN:

| FY | Color of $ | Est. Hrs. | Core Hrs. | Hrly Rate | Est. Cost | Award Fee | Total Est. Cost + Award Fee |
|----|-----------|-----------|-----------|-----------|-----------|-----------|-----------------------------|
| 02 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |
| 03 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |
| 04 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |
| 05 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |
| 06 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |
| 07 | (3400) | Xxx,xxx | Xx,xxx | $xx.xx | $xx,xxx,xxx | %YY | $xx,xxx,xxx |

14.     Each individual element of Honeywell's proposed strategy is proprietary and confidential.  Honeywell spent considerable bid and proposal funds -- not government funds -- to determine which CLINs should have higher or lower skilled employees and higher or lower loaded rates, and more or less hours, as its unique strategy and solution to best perform the

Contract effort. Based on its unique strategy and solution in its proposal, Honeywell was selected by the Air Force for award as providing the best value to the government.

15.    The Contract includes six base years and three additional three-year options. Therefore, technical and pricing information is disclosed for, at a minimum, fiscal years 2002 through 2007. Accordingly, this information affects contracts for which Honeywell is submitting proposals now and for several years into the future.

16.    Honeywell is currently preparing its competitive proposals for several opportunities in the government space business including: (1) the upcoming Eastern Range Test Support contract for the Air Force 45th Space Wing; (2) Engineering Development and Sustainment, (3) Joint Base Operations and Support contract for the NASA/Kennedy Space Center at Patrick AFB; and (4) Network Support Operations and Maintenance for the Air Force 50th Space Wing. Release of any of the aspects of the technical or pricing information -- technical solution, loaded labor rates by CLIN by year, labor hours by CLIN by year, estimated cost by CLIN by year, or estimated price by CLIN by year -- will provide Honeywell's competitors an opportunity to adjust their proposal strategies on these specific near term opportunities and all other opportunities involving technical services related to the space business for many years to come.

17.    The RFP also requested offerors to submit proposals for work not contemplated by the Air Force's PB-SOW. Honeywell voluntarily submitted proposal elements to include development of the Diego Garcia tracking station. The Air Force incorporated Honeywell's voluntary Diego Garcia proposal as an option CLIN in the Contract. The Air Force is now sending mixed messages about whether it will compete the Diego Garcia project, although the work scope and pricing was developed by Honeywell without government input and was

submitted to the Air Force voluntarily. Release of Honeywell's technical and pricing information regarding the Diego Garcia tracking station would improperly hand Honeywell's hard earned advantage to its fiercest competitors. Another fiscal year 2006 option CLIN on which the Air Force has not taken action is the Transportable Remote Tracking Station Block Change and release of Honeywell's technical and pricing information regarding that option will cause Honeywell substantial competitive harm.

### FOIA REQUEST

18.     By letter dated February 2, 2005, the Air Force notified Honeywell of a FOIA request by the FOIA Group, Inc. for a copy of the Contract, including the performance-based statement of work, the modifications, the delivery orders and the work authorizations. The FOIA Group, Inc. is in the business of gathering competitive intelligence for government contractors and Honeywell assumes the ultimate client of the FOIA Group is Lockheed Martin, Northrop Grumman, L-3 Communications, or one of Honeywell's other toughest competitors. Honeywell provided a response on February 28, 2005, objecting to release of its confidential commercial and financial information.

19.     On June 15, 2005, the Air Force responded by letter that it intended to release the Contract information over Honeywell's objections. The Air Force's basis for releasing Honeywell's price information, rate information, estimated labor hours, and line item prices in the basic contract and the labor hours, labor costs, material costs, and rate information within the work authorizations was that "FAR 15.506(d)(2) requires the government to release 'overall cost or price (including unit prices) . . . .' Therefore, this information is already available to competitors." The Air Force further argued that there were too many variables used in calculating pricing for the release to cause Honeywell substantial competitive harm.

20.    On July 30, 2005, Honeywell provided additional factual and legal support for its objections, including sworn affidavits that set forth detailed facts describing that the Air Force's release of Honeywell's confidential commercial and financial information in the Contract will cause Honeywell substantial competitive harm and should not be released.  The affidavit of Ms. Debra Brown, the Remote Tracking Station Block Change Program Manager, includes detailed facts supporting Honeywell's objections to the release of Section 3.1 of the PB-SOW, as well as portions of the proposal that were voluntarily submitted.  The affidavit of Ms. Kimberly Ann Quail, Manager Contract Drafting and Proposal Support, provides facts regarding Honeywell's strategy and unique approach that is reflected in the confidential commercial and financial information in question.  Release of any of this technical or pricing information would cause substantial competitive harm to Honeywell.

21.    On August 18, 2005 , the Air Force notified Honeywell that it would release Honeywell's technical and financial information over its objections, including the following: (1) estimated hours by CLIN and year; (2) core hours by CLIN and year; (3) hourly rate by CLIN and year; (4) estimated cost and total estimated cost plus award fee for each CLIN and year; (5) the PB-SOW Section 3.1 contained within the basic contract; and (6) the estimated hours, estimated cost, related funding values and task descriptions contained within the modifications, delivery orders and work authorizations.  The Air Force agreed to withhold only the unit prices for CLINs and options in effect after 30 September 2005.

22.    The Air Force's August 18, 2005 notice does not include evidence of adequate consideration of Honeywell's factual and legal analysis supporting its position that the technical and pricing information at issue is confidential commercial information constituting trade secrets that is exempt from disclosure.  The Air Force does not show as it is required to do by

controlling precedent and authority how the information would be ineffective in the hands of

Honeywell's competitors in their efforts to take over all or parts of Honeywell's current work or

in upcoming competitions. Moreover, there is no evidence that the Air Force even considered

the upcoming competitions involving Air Force and NASA procurements specifically discussed

in Honeywell's objections.

23.    The Air Force's August 18, 2005 letter constitutes a final agency action to deny

confidential commercial and financial information protection for the technical and pricing

information contained in the Contract, and to disclose the information to the public. This is the

final agency action against which relief is sought herein.

### TECHNICAL AND PRICING INFORMATION UNDER THE CONTRACT IS A TRADE SECRET AND CONFIDENTIAL COMMERCIAL OR FINANCIAL INFORMATION, THE RELEASE OF WHICH WILL CAUSE SUBSTANTIAL COMPETITIVE HARM

24.    When submitted to the Air Force, Honeywell marked the sensitive technical and

pricing portions of its proposal, as well as other portions, with a protective legend advising the

Air Force that the information was confidential and proprietary, and should not be disclosed

outside of the Air Force.

25.    Disclosure of the technical information and pricing structure required for the

Contract will cause substantial and irreparable competitive harm to Honeywell because it will

provide Honeywell's competitors and Honeywell's commercial customers insight into the criteria

for Honeywell's award fee, unit pricing, hourly rates, hours, and pricing structure over time,

allocation of costs amongst development and sustainment, and, thus, providing a blueprint or

roadmap of Honeywell's remote tracking station development and capability strategy. Because

the cost of development and sustainment are the two key factors in competitive sales of space

technical services contracts, release of this commercial confidential information will affect

Honeywell's competitive position in its government and commercial sales of space technical services.

26.    The technical services industry is extremely competitive, and technological advancements are occurring rapidly. Honeywell's ability to compete in this industry is dependent upon the development and use of new technology and practices, particularly as employed in development and sustainment of tracking stations. Honeywell's technical and pricing information submitted to the Air Force, if disclosed to the public, will reveal Honeywell's development and sustainment improvements based on new technology and practices, and will provide other companies with valuable information about anticipated but unannounced option work. Such information will provide other companies with an unfair competitive advantage against Honeywell.

27.    Honeywell's technical and pricing information voluntarily furnished to the Air Force for the Contract is not the kind of information that Honeywell customarily would release to the public. All employees or contract personnel of Honeywell are briefed on non-disclosure policies and agreements, and internal policy dictates that contract information is communicated to employees only on a need-to-know basis. The information contained in the Contract that Honeywell has identified for redaction is the type of information that Honeywell employees are not permitted to disclose to the public and is treated as strictly confidential.

### THE AIR FORCE'S POLICY TO RELEASE TECHNICAL AND UNIT PRICING INFORMATION WITHOUT CONSIDERING WHETHER IT IS A TRADE SECRET OR CONFIDENTIAL COMMERCIAL INFORMATION VIOLATES THE FAR AND IS ARBITRARY, CAPRICIOUS, AND AN ABUSE OF DISCRETION

28.    The administrative record contains no facts or factually supported analysis rebutting or addressing Honeywell's detailed factual and legal reasoning that the technical and pricing information is confidential commercial information constituting a trade secret, the release

of which will cause Honeywell substantial competitive harm. The Air Force failed to make the factual determination required by FOIA, 5 U.S.C. § 552(b)(4) prior to its contemplated release of information deemed by its submitter to be trade secret and confidential commercial and financial information.

29.     While the Air Force makes a limited concession to comply with only part of controlling precedent and authority by stating that it will withhold certain unspecified unit prices relating to future work, it mistakenly argues that Honeywell is obligated to demonstrate <u>actual</u> competition for a showing of substantial likelihood of competitive harm, and it applies a limited definition of trade secret that is not consistent with the law. In addition, the Air Force mistakenly interprets the FAR to treat all "unit pricing" information as if such information can never be confidential commercial or financial information or a trade secret. The Air Force violates the FAR provisions governing release of a contractor's information by blindly following flawed Air Force policy based on a misinterpretation of the FAR. The flawed Air Force policy resulted in a determination to release Honeywell's confidential technical and pricing information to the public without considering Honeywell's detailed factual and legal reasoning to support its contention that such release will cause it to suffer substantial competitive harm.

30.     The basis upon which the Air Force policy at DoD Regulation 5400.7/Air Force Supplement ¶ C.3.2.1.4.8 apparently relies is an alleged "change" to the FAR Part 15 which provides for release of unit prices to unsuccessful offerors. <u>See</u> FAR § 15.506(d). The same FAR provision -- FAR § 15.506(d) -- must be read together with 15.506(e), which <u>prohibits</u> the release or disclosure of confidential and commercial financial information that is exempt from release under FOIA. Accordingly, the Air Force's decision to release Honeywell's confidential technical and pricing information to the public without considering its character as a trade secret

or confidential commercial or financial information is contrary to the Air Force's own regulations.

31.    The law is clear that it is wrong for the Air Force or any executive agency to determine that all constituent pricing information must be revealed in the absence of a pinpoint model of how such pricing information would be used against the party seeking non-disclosure. When presented with detailed factual and legal reasoning from Honeywell supporting its assertion that the information falls within Exemption 4 and must be withheld from release, the Air Force has an obligation to substantiate its position by explaining why it would be likely that the presence of unknowable or unpredictable factors would fatally complicate the competitor's attempts to determine or make use of the competitive data.  The Air Force's failure to provide actual evidence, and its reliance upon casual observations, rather than providing a well-reasoned logical argument showing why Honeywell would not suffer substantial competitive harm upon release of the Contract information, is arbitrary and capricious.

32.    The Air Force's policy of releasing all contract pricing information without considering a contractor's legitimate claims of confidentiality also is not in the best interests of the Government.  This policy will impair the Government's ability to obtain necessary information in the future, and will result in reduced participation in federal procurement and higher overall prices to the Government.

## COUNT I

### (ADMINISTRATIVE PROCEDURES ACT VIOLATION BY UNAUTHORIZED OR UNLAWFUL DISCLOSURE THREATENED BY DEFENDANTS)

33.    Plaintiff incorporates by reference paragraphs 1 through 32 of its Complaint above, as if fully restated herein.

34.    Honeywell's technical and pricing information is confidential commercial and financial information exempt from mandatory disclosure under Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4).

35.    Public disclosure by the Air Force of the confidential technical and pricing information is prohibited by the Trade Secrets Act, 18 U.S.C. § 1905.

36.    The Air Force's policy to disclose all contractor pricing information and certain technical information without determining if its disclosure will cause substantial and irreparable competitive harm is arbitrary, capricious, an abuse of discretion, and unlawful.

37.    Public disclosure of the confidential technical and pricing information is prohibited by FAR §§ 3-104-2, 15.503, 15.506, and 15.609.

## COUNT II

(ADMINISTRATIVE PROCEDURES ACT VIOLATION BY UNAUTHORIZED OR UNLAWFUL DISCLOSURE THREATENED BY DEFENDANTS)

38.    Plaintiff incorporates by reference paragraphs 1 through 37 of its Complaint above, as if fully restated herein.

39.    In the alternative, if FAR §§ 15.503(b) and 15.506(d) mandate release of technical and unit pricing information in every instance without an agency determination of the likelihood of substantial competitive harm, such FAR provisions violate FOIA, 5 U.S.C. § 522(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905.

40.    In the alternative, if FAR §§ 15.503(b) and 15.506(d) mandate release of technical and unit pricing information in every instance without agency consideration of the likelihood of substantial competitive harm, such FAR provisions were promulgated without the requisite notice and comment required by the Administrative Procedure Act, 5 U.S.C. § 553.

## PRAYER FOR RELIEF

WHEREFORE, on the basis of the foregoing, Honeywell respectfully requests the Court to:

(i)    Declare that the technical and pricing information at issue was voluntarily submitted to the Air Force, is customarily kept confidential, and therefore falls within the scope of Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905;

(ii)    In the alternative, declare that the technical and pricing information at issue was submitted to the Air Force, is confidential, and its release to the public will likely cause Honeywell substantial competitive injury, and therefore falls within the scope of Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905, and is prohibited from disclosure by FAR §§ 3-104-2, 15.503, 15.506, and 15.609;

(iii)    Set aside the Air Force's decision to disclose the information at issue as arbitrary and capricious, an abuse of discretion, and not in accordance with law;

(iv)    Declare that the FAR provisions and Air Force policy upon which the Air Force bases its decision to release the technical and pricing information at issue violates FOIA, 5 U.S.C. § 552(b)(4), and the Trade Secrets Act, 18 U.S.C. § 1905, and are therefore null and void;

(v)    Declare that the FAR provisions and Air Force policy upon which the Air Force bases its decision to release the technical pricing information at issue were promulgated without the requisite notice and comment required by the Administrative Procedure Act, 5 U.S.C. § 553, and are therefore null and void;

-14-

    (vi)    Permanently enjoin the Air Force, and its officers, agents, and employees, from disclosing the pricing information at issue; and

    (vii)    Grant such other and further relief as may be just and proper.

Respectfully submitted,

*Richard J. Vacura*

Richard J. Vacura, D.C. Bar No. 436669
Holly Emrick Svetz, D.C. Bar No. 442868

Morrison & Foerster LLP
1650 Tysons Blvd., Suite 300
McLean, VA 22102
TEL:   (703) 760-7700
FAX:   (703) 760-7777

Attorneys for Plaintiff
Honeywell Technology Solutions, Inc.

Dated: September 6, 2005

Of Counsel:

Victor J. Miller
Honeywell Technology Solutions, Inc.
7000 Columbia Gateway Drive
Columbia, MD 21046
TEL:  (410) 964-7105
FAX:  (410) 964-7107

## **VERIFICATION**

I hereby declare under penalty of perjury that the foregoing allegations in Honeywell Technology Solutions, Inc. Complaint for Declaratory Judgment and Injunctive Relief are true and correct to the best of my knowledge and belief.

Dated: September 6, 2005

**Stephen P.  Hopkins,**

**Program Director**